UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JODI E. SUPINSKI, individually, as personal representative of the estate of RALPH S. SUPINSKI, deceased, and as personal representative of the estate of CAROL ANN SUPINSKI, deceased,<br><br>       Plaintiff,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      No. 4:07-CV-963 (CEJ)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment. Plaintiff has filed a response in opposition, and the issues are fully briefed.

This case arises from a private airplane crash that resulted in the deaths of Ralph and Carol Ann Supinski. Plaintiff Jodi E. Supinski brings this action individually and as the personal representative of her deceased parents' estates. Plaintiff alleges that the United States was negligent in issuing an airman's certificate to the airplane's pilot. She asserts a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80. Defendant moves for summary judgment.

### I.     Background

Mark Stephen Kaplan graduated from a flight instruction program at Skyline Aeronautics, LLC, (Skyline) on August 13, 2004. On August 19, 2004, he failed a required "practical test." He retook the test on August 21, 2004 and passed it; his temporary airman certificate was issued that same day. Mr. Kaplan then began additional training so he could fly high-performance aircraft. He received an endorsement to fly such aircraft on September 10, 2004. On the evening of

September 12, 2004, Mr. Kaplan took off from Sikeston, Missouri, in a high-performance plane; the Supinskis were among his passengers. He aborted his first landing attempt at the Spirit of St. Louis Airport in Chesterfield, Missouri, telling the controllers that he was "going around." The plane crashed shortly thereafter, causing fatal injuries to Mr. Kaplan and his passengers. It is likely that this flight was Mr. Kaplan's first night-time solo in a high-performance aircraft.

Mr. Kaplan enrolled in the private-pilot training course at Skyline in 2004. Kristina Cross (nee Berisford) became his instructor in June 2004.[1] Ms. Cross testified that she trained Mr. Kaplan in accordance with Skyline's approved flight course syllabus. His lessons and solo flights were conducted in a single-engine Cessna 172 airplane or a flight simulator that replicates its instruments. The Cessna 172 is not a high-performance airplane.

Shortly before August 13, 2004, Ms. Cross spoke with Michael Gaffney, Skyline's owner, and John Krakowski, the chief flight instructor, regarding Mr. Kaplan. She told them that Mr. Kaplan was completing all required components of every lesson and was beginning to meet all standards to pass the upcoming practical test. Nonetheless, in comparison with her other students, she found it more difficult to get him to conform to her expectations. In particular, he balked at reading the preflight checklist out loud and she felt that he was only doing so in order to pass the lessons. Ms. Cross testified that she was told to ensure that Mr. Kaplan met all the lesson standards and to put her

---

[1]Mr. Kaplan initially took lessons from Michael Wooley. Mr. Wooley left Skyline for employment with a regional carrier in June 2004. Ms. Cross had provided some ground instruction lessons to Mr. Kaplan when Mr. Wooley was not available. Because a connection had already been established, Mr. Wooley asked Ms. Cross to take over Mr. Kaplan's instruction.

concerns in writing. Ms. Cross testified that she began drafting a document that she finally emailed to Mr. Gaffney on August 19, 2004.[2]

Mr. Kaplan passed the required end-of-course test. He then took a graduation flight with Mr. Gaffney on August 13, 2004. On August 18, 2004, Ms. Cross completed the paperwork Mr. Kaplan needed in order to take the single-engine practical test. She also gave Mr. Kaplan a flight lesson to prepare for the practical test. She testified that the purpose of the flight was go over maneuvers identified by Mr. Gaffney during the graduation ride. Ms. Cross stated that the lesson lasted "quite a long time because things were not up to standards." They kept doing the maneuvers until "everything was satisfactory." Ms. Cross wrote the following comments on the lesson plan: "Talking out loud; GUMPS check; Patterns too wide; Situational awareness; Checklists." She testified at deposition that she wrote "talking out loud" because Mr. Kaplan was starting to comply with her request that he do this. Similarly, he completed the GUMPS check, made appropriate use of checklists, and had improved his situational awareness. She testified that the only item of concern on this list

_____

[2]The email stated in relevant part that Mr. Kaplan was initially "a little too anxious to solo" and "seemed a bit frustrated that . . . [she] may delay his solo." Ms. Cross wrote, "This attitude worried me because I feel that a student pilot should trust his instructor's judgment." Thereafter, Ms. Cross stated, Mr. Kaplan "began to show complacency in the airplane." For example, he would not use checklists unless she "made him." He also thought "that a GUMPS check or any before landing checklist was a waste of time if he was doing touch and go's and remaining in the pattern." Finally, she noted, he argued with her about the timing of simulated engine failures." Ms. Cross concluded by stating that she "endorsed Mr. Kaplan because he did meet all of the standards for the practical test and he passed his Part 141 Graduation ride. I am writing you because even though Mr. Kaplan performed well on his Grad ride and will pass his practical test, I am worried about his complacent attitude toward flying and expressing my concern for his safety post check ride."

regarded his patterns being wide, which Ms. Cross regarded as preferable to being too narrow.[3]

On August 19, 2004, Mr. Kaplan presented himself to Donald Koch, a Designated Pilot Examiner. Mr. Koch verified that Mr. Kaplan's paperwork was complete[4] and that he met the requirements for taking the practical test. Mr. Kaplan passed the two-and-a-half hour oral examination. During the flight test, however, Mr. Kaplan did not satisfactorily perform a maneuver known as a "forward slip to a landing"[5] and did not pass the test. Mr. Koch testified that when he informed Mr. Kaplan that he had not passed, he could tell that Mr. Kaplan was disappointed. Mr. Kaplan conveyed that he hoped his deficiency could be overlooked. Mr. Koch testified that he told Mr. Kaplan that this would not be "good for anybody," and that he should get more training. Mr. Koch told Ms. Cross what additional training was required.

On August 20, 2004, Thomas Russell made an unannounced visit to Skyline. Mr. Russell was the FAA's Principal Operations Inspector (POI) for Skyline. As POI, Mr. Russell provided oversight to ensure that Skyline was in compliance with applicable regulations, was conducting its training in accordance with its approved curriculum, and was maintaining proper documentation. He also conducted an annual check ride with the chief flight instructor and completed an annual inspection of the premises. In addition, he periodically inspected student records to ensure that they were being

---

[3]Plaintiff asserts that this list of five items actually reflects five defects in Mr. Kaplan's performance. The author of the list testified otherwise and plaintiff presents no evidence to support her interpretation.

[4]Mr. Koch testified that he examined Mr. Kaplan's log book, graduation certificate, and portions of his training record.

[5]Mr. Koch described the deficiencies in the maneuver as performed by Mr. Kaplan as, first, he did not land on the center line and, second, he did not have good control. Mr. Kaplan properly used checklists, demonstrated sound judgment, and did not display a complacent attitude.

kept in compliance with documentation requirements. When Mr. Russell dropped by Skyline on August 20, 2004, Mr. Gaffney showed him Ms. Cross's email regarding her concerns about Mr. Kaplan's attitude toward flying. Mr. Gaffney told Mr. Russell that he had met with Mr. Kaplan to discuss his progress and to inform him of what was required of him. Mr. Russell told Mr. Gaffney to contact him if he had further concerns. Mr. Russell testified that he never heard anything further from Mr. Gaffney. He assumed all concerns had been addressed because Mr. Kaplan received Ms. Cross's endorsement and passed his graduation ride.

The regulations require an applicant who fails the practical test to receive additional training in the failed maneuver and obtain the instructor's endorsement. Ms. Cross retrained Mr. Kaplan on the forward slips on August 21, 2004, and endorsed him to retake the practical test. She testified that Mr. Kaplan expressed a good attitude and demonstrated proficiency and a willingness to follow instructions.

On August 21, 2004, after receiving the endorsement from Ms. Cross, Mr. Kaplan presented his paperwork to Mr. Koch for retesting. Mr. Koch determined that the paperwork was in order and readminstered the test. During the retest, Mr. Kaplan used checklists properly, demonstrated sound judgment, and did not display a complacent attitude. He successfully completed all maneuvers and passed the test and his temporary airman certificate was issued that day. Mr. Koch testified that he believed Mr. Kaplan was entitled to the certificate. Mr. Koch subsequently forwarded Mr. Kaplan's paperwork to Raymond Callahan at the FAA's St. Louis office.[6] Mr. Callahan reviewed the paperwork for completeness and forwarded it to the FAA Airman Certification Branch.

---

[6]Mr. Callahan was the POI responsible for oversight of Mr. Koch's activities as a Pilot Examiner.

Mr. Kaplan had told Ms. Cross that he wanted to pilot a Cessna 182. In order to do so, he required an endorsement for high-performance aircraft in addition to the temporary airman certificate. On August 27, 2004, Ms. Cross gave Mr. Kaplan his first lesson in a Cessna 182. She testified that she denied his request to "sign him off" because he needed a lot more practice with landing maneuvers. Mr. Kaplan received at least two additional lessons from another instructor. On September 10, 2004, Ms. Cross gave Mr. Kaplan another lesson, at the conclusion of which she gave him the high performance endorsement that allowed him to act as pilot in command of a Cessna 182. The fatal crash occurred on September 12, 2004.

Plaintiff's expert, Daniel L. Snyder, reviewed deposition testimony and training records. Citing the email Ms. Cross wrote to Mr. Gaffney, Mr. Snyder concludes that Ms. Cross failed to provide instruction to Mr. Kaplan until she was satisfied with his piloting skills. He opines that Mr. Koch conducted the two check rides within FAA requirements and that it was "correct" for Mr. Koch to issue the airman's certificate to Mr. Kaplan on August 21st. Mr. Snyder states that Mr. Russell was negligent for failing to open an investigation into the allegations contained in Ms. Cross's email. "An investigation," he states, "would have led to further training or administrative remedies which would have likely prevented the accident."

Defendant's expert, William R. Baumheuter, III, opines that during the accident flight Mr. Kaplan likely made errors common to pilots with minimal night operating experience: excessive airspeed on final approach and excessive instrument panel illumination. Mr. Kaplan was also approaching Spirit of St. Louis Airport from an unfamiliar direction. Mr. Baumheuter opines that, after aborting his first landing attempt and initiating the go-around, Mr. Kaplan likely became visually disoriented and allowed the plane to enter "an unusual flight attitude" which caused the crash.

With respect to Mr. Kaplan's training, Mr. Baumheuter notes that satisfactory

performance on the practical test is based on the applicant's ability to safely:

> 1. perform the TASKS specified in the AREAS OF OPERATION for the certificate or rating sought within the approved standards;
>
> 2. demonstrate mastery of the aircraft with the successful outcome of each TASK performed never seriously in doubt;
>
> 3. demonstrate satisfactory proficiency and competency within the approved standards;
>
> 4. demonstrate sound judgment; and
>
> 5. demonstrate single-pilot competence . . .

Exp. Rept. William Robert Baumheuter, III, Deft.'s Ex. G. at 15 [Doc. #76-10] (quoting

FAA Private Pilot Airplane Practical Test Standards). According to Mr. Baumheuter, the

fact that Mr. Kaplan met these standards and received a private pilot certificate is

evidence that he no longer demonstrated a questionable attitude or complacency.

## II.    Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary

judgment shall be entered "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." In ruling on a motion for summary judgment the court

is required to view the facts in the light most favorable to the non-moving party and

must give that party the benefit of all reasonable inferences to be drawn from the

underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The

moving party bears the burden of showing both the absence of a genuine issue of

material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio

Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III.   Discussion

In order to succeed on her claim under the FTCA, plaintiff must identify a person whose negligence can be attributed to the government. Initially, plaintiff based her claim on allegations that Ms. Cross and Mr. Koch were negligent in their training and certification of Mr. Kaplan. That claim failed because the United States cannot be held liable for the actions of private employees.[7] Plaintiff also alleged that Mr. Callahan, an FAA employee, was negligent in allowing Mr. Kaplan to receive his airman's certificate, but she no longer seeks relief on that basis. Plaintiff now contends that Mr. Russell, also an FAA employee, was negligent for failing to investigate Ms. Cross's email.

Defendant notes that plaintiff made no allegations with respect to Mr. Russell in her complaint and suggests that plaintiff should not be allowed to introduce a new basis for her claims at this late stage. Plaintiff's first amended complaint includes allegations that the United States, acting through its agencies, agents, and employees, breached its duty regarding the qualification of pilots. Her current contention---that

---

[7]The Court granted defendant's motion to dismiss plaintiff's claims based upon the alleged negligence of Ms. Cross and Mr. Koch. Claims based on allegations of negligent hiring, training, and supervision were dismissed under the discretionary function exception.

it was Mr. Russell's negligence that caused her parents' deaths---fits within this broad allegation and defendant does not claim that it is prejudiced by plaintiff's most recent change in her theory of the case. The Court will address the merits of defendant's summary judgment motion.

Defendant proffers three arguments in favor of summary judgment. First, that Mr. Russell's actions fall within the discretionary function exception and the claim is thus barred by sovereign immunity. Second, that Mr. Russell had no duty under Missouri law to further investigate the allegations contained in Ms. Cross's email. And, finally, that Mr. Russell's alleged failure to investigate was not the proximate cause of the plane accident. For the reasons discussed below, the Court finds that the discretionary function exception applies to plaintiff's claim and declines to address defendant's additional arguments.

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted); see Collins v. United States, 564 F.3d 833, 837-38 (7th Cir. 2009) ("Because of its sovereign immunity, the federal government does not have to allow people to sue it."). The scope of waivers of sovereign immunity must be strictly construed. LaFramboise v. Leavitt, 439 F.3d 792, 795 (8th Cir. 2006) (citing Lane v. Pena, 518 U.S. 187, 192 (1996)).

The FTCA waives sovereign immunity for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The

discretionary function exception to the waiver of immunity provides that the Government is not liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The purpose of the exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984). The exception covers only discretionary acts that involve an element of judgment or choice. United States v. Gaubert, 499 U.S. 315, 322 (1991) (citing Berkowitz v. United States, 486 U.S. 531, 536 (1988)). It is the nature of the conduct, rather than the status of the actor, that governs whether the exception applies. Id. If a federal statute or regulation specifically prescribes an employee's course of conduct, the exception does not apply because "the employee has no rightful option but to adhere to the directive." Berkowitz, 486 U.S. at 536.

A two-part test determines when the discretionary function exception applies. Riley v. United States, 486 F.3d 1030, 1032 (8th Cir. 2007). First, the conduct at issue must be discretionary, involving an element of judgment or choice. Id. The "second requirement is that the judgment at issue be of the kind that the discretionary function exception was designed to shield." Id. (quoting C.R.S. v. United States, 11 F.3d 791, 796 (8th Cir. 1993)). "When established governmental policy . . . allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in a policy when exercising that discretion." Gaubert, 499 U.S. at 324.

Plaintiff argues that FAA safety regulations required Mr. Russell to do more than discuss with Skyline officials their response to Mr. Kaplan---Mr. Russell, she contends, was required to "investigate" Mr. Kaplan's fitness for certification. As defendant notes, statutes and regulations provide that the FAA Administrator "may" investigate or re-examine an airman, or take action against an airman's certificate. See 49 U.S.C. 46101; § 46106; § 44709; 14 C.F.R. § 13.3; § 13.11; § 31.19. This language is permissive and does not impose a mandatory duty on Mr. Russell. See Redmon v. United States, 934 F.2d 1151, 1156-57 (10th Cir. 1991) (FAA flight safety inspector did not violate FAA regulations in failing to investigate private pilot's fitness). Plaintiff relies on 14 C.F.R. § 61.103, § 61.105, and § 61.107 to support her claim that Mr. Russell's conduct was constrained by specific mandatory language. As plaintiff acknowledges, however, all three regulations address the eligibility requirements for private pilots, not the conduct of FAA employees. Plaintiff also cites FAA Orders 8410.1A and 8900.1 and Advisory Circular 120-54A. These documents, she contends, reflect the FAA's policies and overall scheme of promoting safety. There is no dispute that the FAA promulgates policies with the goal of promoting safety. In order to survive summary judgment, however, plaintiff must point to a document that prescribes the conduct of a POI under the circumstances presented in this case. She has not done so. When confronted with the information in Ms. Cross's email, Mr. Russell was clearly called upon to exercise judgment and select among a number of choices that were available to him. The first requirement of the discretionary function exception is satisfied.

The judgment at issue---what action to take in response to information regarding a student pilot---is also of the type that the discretionary function exception is designed to shield. As the Supreme Court stated in Varig, "When an agency

determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." 467 U.S. at 819. The FAA must balance the ultimate goal of air safety against the reality of finite agency resources. Redmon v. United States, 934 F.2d 1151, 1156-57 (10th Cir. 1991) (FAA flight safety director's failure to investigate private pilot falls within the discretionary function exception); see also Indemnity Ins. Co. of North America v. United States, 539 F.3d 175, 181 (4th Cir. 2009) (Coast Guard determination of number of persons vessel can carry is a decision grounded in considerations of public policy); Roundtree v. United States, 40 F.3d 1036, 1039 (9th Cir. 1994) ("It is difficult to imagine a more policy-driven mission or a more policy-driven set of actions" than the FAA's authority to issue and revoke certificates). Furthermore, courts must presume that an agent's acts are grounded in policy when exercising discretion. Gaubert, 499 U.S. at 324. Plaintiff has articulated no basis for setting aside that presumption in this case. The Court concludes that plaintiff's claims arising out of the response of FAA employee Thomas Russell to the Cross email are barred by the discretionary function exception.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant United States for summary judgment [Doc. #70] is **granted**.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 29th day of December, 2009.